**GIBSON, DUNN & CRUTCHER LLP**
DEBORAH L. STEIN, SBN 224570
  dstein@gibsondunn.com
THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fac.: 213.229.7520

*Attorneys for Defendants Travelers Casualty*
*Insurance Company of America and The*
*Travelers Indemnity Company of Connecticut*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEST AUTO REPAIR, Inc., a California Corporation; ISAAC KAHAN KASHANI, D.D.S. A PROFESSIONAL DENTAL CORPORATION dba LASTING IMPRESSIONS DENTAL SPA, a California Corporation; JON M. POSTAJIAN, DOCTOR OF CHIROPRACTIC, INC., a California Corporation; DEBBY PAZ dba PRO BEAUTY BY DEBBY; TOROSLAN ENTERPRISES, INC., a California Corporation; VANRITA SUIT, INC. dba L.A. Suit Exchange, a California Corporation; B. DEIRMENJIAN, D.D.S., INC. dba PONDEROSA DENTAL GROUP, SMILES WEST COMPTON, SMILES WEST HUNTINGTON PARK, SMILES WEST LA PUENTE, SMILES WEST LOS ANGELES, SMILES WEST LYNWOOD, SMILES WEST MISSION HILLS, SMILES WEST MONEBELLO, SMILES WEST MORENO VALLEY, SMILES VAN NUYS, a California Corporation; SANDRA DEIRMENJIAN, D.D.S., INC. dba DENTAL WONDERLAND, a California Corporation; DEIRMENJIAN DENTISTRY, INC. dba SMILES WEST COVINA, a California Corporation; ADORE NAIL SPA, Inc., a California Corporation; THUY TRAN, an individual; AFSANEH ZOKAEI, DDS, A | **CASE NO. 2:21-cv-02874**<br><br>**NOTICE OF REMOVAL BY DEFENDANTS TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA AND THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT**<br><br>[Removal from the Superior Court of the State of California, Los Angeles County, Case No. 21STCV01736] |

Travelers Defendants' Notice of Removal

1  PROFESSIONAL CORPORATION
   dba NEIGHBORHOOD DENTAL
2  GROUP, a California Corporation;
   M&F DEVELOPMENT, LLC, a
3  California Limited Liability Company;
   THE WAX SHOP, INC., a California
4  Corporation,

5                        Plaintiffs,

6       v.

7  TRAVELERS CASUALTY
   INSURANCE COMPANY OF
8  AMERICA, a Connecticut Corporation;
   THE TRAVELERS INDEMNITY
9  COMPANY OF CONNECTICUT, a
   Connecticut Corporation;
10 GROSSLIGHT INSURANCE, INC., a
   California Corporation; GILBERT F.
11 GROSSLIGHT, an individual; and
   DOES 1 through 50, inclusive,

12                      Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF CONTENTS**

3   I.    BACKGROUND ........................................................................................ 2

4   II.   THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT
5         TO 28 U.S.C. § 1332 ............................................................................... 6

6         A.    There Is Complete Diversity of Citizenship Between Each Plaintiff
                and Travelers .................................................................................. 7

7         B.    The Amount in Controversy Exceeds $75,000 as to Each Plaintiff .......... 9

8   III.  THE GROSSLIGHT DEFENDANTS ARE FRAUDULENTLY JOINED
9         BECAUSE THE CLAIMS AGAINST THEM ARE NOT RIPE ..................... 13

10  IV.   THE GROSSLIGHT DEFENDANTS ARE FRAUDULENTLY JOINED
          BECAUSE (EVEN IF THE CLAIMS AGAINST THEM WERE RIPE),
11        THEY CANNOT BE LIABLE ON ANY THEORY ....................................... 16

12        A.    Plaintiffs Do Not and Cannot State a Claim for Declaratory or
                Injunctive Relief Against the Grosslight Defendants ............................ 16

13        B.    Under California Law, Breach of Fiduciary Duty Is Not A
14              Cognizable Claim Against An Insurance Broker .................................. 20

15        C.    The Remaining Claims Are Predicated On Heightened Duties the
                Grosslight Plaintiffs Did Not Owe ................................................... 21

16              1.    To the Extent the Grosslight Defendants Owed a Duty to the
17                    Deirmenjian Plaintiffs, That Duty Was Limited .......................... 22

18              2.    The Grosslight Defendants Procured the Insurance the
                      Deirmenjian Plaintiffs Allegedly Requested ............................... 23

19              3.    The Grosslight Defendants Owed No Elevated Duty of Care
20                    to Plaintiff Under California Law .............................................. 24

          D.    The Complaint Does Not State a Cognizable Fraud Claim ................... 28
21
          E.    Plaintiffs Cannot Defeat Removal by Amending Their Complaint to
22              Add New Claims Against the Grosslight Defendants ............................ 30

23  V.    VENUE .................................................................................................. 31

24  VI.   CONCLUSION ....................................................................................... 31

25

26

27

28

**TO THE CLERK OF THE ABOVE-TITLED COURT, AND TO PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Travelers Casualty Insurance Company of America and The Travelers Indemnity Company of Connecticut (together, "Travelers") hereby remove this action from the Superior Court of the State of California for Los Angeles County, where it is pending as Case No. 21STCV01736, to the United States District Court for the Central District of California.

This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Travelers and each Plaintiff and the amount in controversy as to each Plaintiff exceeds $75,000, exclusive of interest and costs. *See infra* Part II. The citizenship of Defendant Does 1 to 50 should be disregarded for purposes of evaluating diversity. 28 U.S.C. § 1441(b)(1); *see McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (district court properly disregarded Doe defendants who were not "indispensable parties and served no other purpose than protecting the plaintiff under California pleading practice"). The citizenship of the remaining Defendants, Grosslight Insurance, Inc., a California corporation, and Gilbert F. Grosslight, a citizen of California (together, "the Grosslight Defendants"), should also be disregarded because they are not properly joined in this lawsuit. Rather, the Grosslight Defendants were apparently joined in an attempt to destroy diversity among the parties. This fraudulent joinder is ineffective and should not be considered in the evaluation of this Court's jurisdiction. Grounds for removal are set forth in further detail below.

## I.   BACKGROUND

1.   Plaintiffs commenced this action on January 15, 2021, in the Superior Court of the State of California for Los Angeles County, which is within the district and division to which this case is removed. As required under 28 U.S.C. § 1446(a), a

copy of all process, pleadings, and orders served upon Travelers in the underlying state court action is attached herewith.

2.     Plaintiffs are fourteen individuals and businesses ranging from an auto repair garage to a chiropractic practice, holding ten Travelers policies among them. The policies are as varied as the Plaintiffs, spanning six separate types of policies, each issued by one of two Travelers entities.  Each policy was obtained through a different insurance brokerage or agency—the Grosslight Defendants secured only the Deirmenjian Plaintiffs' policy.[1]  All but the Deirmenjian Plaintiffs recently filed requests before the Los Angeles Superior Court to dismiss their claims against the Grosslight Defendants but, to date, those dismissals have not yet been entered.

3.     In this insurance coverage action, Plaintiffs allege that their insurance policies insure "business income" losses that were suffered "[d]ue to the closure orders" issued by the City of Los Angeles and the State of California, and due "as well [to] the presence of COVID-19."  Compl., ¶¶ 31, 33, 34, 47.[2]

4.     Plaintiffs allege that "[d]ue to the closure orders, as well as the presence of COVID-19, Plaintiffs have suffered and continue to suffer substantial lost business income and other financial losses totaling millions of dollars."  *Id.* ¶ 47.  Plaintiffs claim that their respective insurance policies insure this "substantial lost business income." *Id.*, ¶¶ 3, 47.

---

[1]  The "Deirmenjian Plaintiffs" are B. Deirmenjian, D.D.S, Inc., Sandra Deirmenjian, D.D.C., Inc., and Deirmenjian Dentistry, Inc.  They are insured by a single Travelers policy.  *See* Compl., Ex. H.

[2]  Plaintiffs' allegations relate to their respective Travelers insurance policies bearing the following policy numbers: 680-8M542778-19-42 (Best Auto Repair); 680-2L469380-19-42 (Isaac Kahan Kashani); 680-9J254793-19-42 (Jon M. Postajian); 680-6N581048-20-42 (Debby Paz); 680-8K20023A-19-42 (Toroslan Enterprises, Inc.); 680-ON10632A-19-42 (Vanrita Suit, Inc.); 680-8F558755-19-42 (the Deirmenjian Plaintiffs); 680-4P820433-19-42 (Adore Nail Spa and Thuy Tran); 680-9N463210-19-42 (Afsaneh Zokaei); 680-1DF55164-19-42 (M&F Development); and 680-8D427414-19-42 (The Wax Shop, Inc.).  *See* Compl., ¶¶ 4–17.

5.      Pursuant to California Code of Civil Procedure §§ 1060 *et seq.*, Plaintiffs seek a declaratory judgment as to five insurance coverage issues: (1) that "[t]he losses in connection with the closure orders and the necessary interruption of business stemming from the COVID-19 pandemic are insured losses under the policies"; (2) that each Defendant "waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for the losses suffered by Plaintiffs by issuing a blanket coverage denial without conducting a claim investigation as required under California law"; (3) that each Defendant is "obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the closure orders during the necessary interruption of their business stemming from the COVID-19 pandemic"; (4) that "[n]o policy coverage exclusions or limitations apply to exclude or limit coverage"; and (5) that "Plaintiffs have suffered actual and covered loss of Business Income in an amount to be determined at trial."  Compl., ¶ 113; *id.*, Prayer for Relief.

6.      Pursuant to the California Business and Professions Code §§ 17200 *et seq.*, Plaintiffs seek "injunctive relief enjoining and restraining Defendants' unlawful conduct as alleged herein, including but not limited to their unfair and unlawful business practices and their wrongful denials of coverage under the policies."  Compl., Prayer for Relief; *id.*, ¶¶ 117–20.

7.      Plaintiffs also seek general, compensatory, economic, consequential, exemplary and punitive damages, interests, fees, and costs related to their allegations of breach of contract, breach of implied covenant of good faith and fair dealing, bad faith denial of insurance claim, unfair business practices in violation of the California Business and Professions Code § 17200 (against Travelers); and allegations of intentional misrepresentation, constructive fraud, unjust enrichment, breach of fiduciary duty, negligence, and negligent misrepresentation (against all Defendants). Compl., Prayer for Relief; *id.*, ¶¶ 57–61 (breach of contract); *id.*, ¶¶ 62–67 (breach of covenant of good faith and fair dealing); *id.*, ¶¶ 68–75 (bad faith insurance claim

denial); *id.*, ¶¶ 76–82 (unfair business practices); *id.*, ¶¶ 83–90 (intentional misrepresentation); *id.*, ¶¶ 91–96 (constructive fraud); *id.*, ¶¶ 97–103 (unjust enrichment); *id.*, ¶¶ 121–26 (breach of fiduciary duty); *id.*, ¶¶ 127–37 (negligence); *id.*, ¶¶ 138–41 (negligent misrepresentation).

8. The Complaint identifies either Travelers Casualty Insurance Company of America or The Travelers Indemnity Company of Connecticut as the insurer for each Plaintiff, from which they seek insurance coverage. *See* Compl., ¶¶ 4–17, 24 ("[t]his action is based, in substantial part, on the breach of an insurance contract"). The Complaint also names the Grosslight Defendants, though they are not parties to the insurance contracts at issue and do not have any rights or obligations under the insurance contracts. The Complaint does not acknowledge that the Grosslight Defendants worked only with the Deirmenjian Plaintiffs, but all other Plaintiffs have now requested dismissal of their claims against the Grosslight Defendants.

9. None of the claims against the Grosslight Defendants is viable as a matter of law. First, not one is ripe. Before any of the claims against the Grosslight Defendants can be brought, there must be a finding of no coverage—a contingent future event. Claims that are contingent on future events are not ripe for adjudication and thus not an Article III "case or controversy." As further explained below, specific to the context of insurance, plaintiffs are not permitted to plead both that a policy exclusion should not apply to them but that, if applied, their insurance agents were negligent in procuring the policy. On this principle alone, the Grosslight Defendants' joinder is fraudulent and Travelers' case is properly before this Court. But there are further, wholly separate reasons why their joinder is fraudulent.

10. Not one of the claims against the Grosslight Defendants identifies them by name, or addresses their specific conduct. And rightly so: because they have no role in Travelers' coverage decisions, the Grosslight Defendants could not play any part in the coverage-specific declaratory and injunctive relief that Plaintiffs seek. The breach of fiduciary claim could not reach the Grosslight Defendants because California

law does not recognize a fiduciary duty from insurance agents to insureds. The five remaining claims fail because they demand heightened duties which, according to settled California law, the Grosslight Defendants did not owe to any Plaintiff. Federal courts have repeatedly upheld and applied each of these California standards. In fact, specific to the context of Coronavirus-related business income insurance coverage disputes, federal courts have already held insurance agents to be fraudulently joined because claims against them were not ripe, and because claims against them did not allege any breach of duty under California's standards. By either path, not a single claim against the Grosslight Defendants is actionable.

11. Because the Grosslight Defendants were fraudulently joined in an apparent attempt to defeat diversity, this Court should disregard their citizenship and assert its subject matter jurisdiction over this action.

12. Travelers was served with the Summons and Complaint no earlier than March 4, 2021. This Notice is timely filed under 28 U.S.C. § 1446(b).

13. Because the Grosslight Defendants were fraudulently joined, their consent is not required for this removal. 28 U.S.C. § 1446(b)(2)(A) ("[A]ll defendants who have been *properly joined* and served must join in or consent to the removal of the action." (emphasis added)); *see also United Comput. Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("[T]he 'rule of unanimity' does not apply to . . . 'fraudulently joined parties.'" (citation omitted)).

14. Upon filing the Notice of Removal, Travelers will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Los Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332

15. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiffs and

Travelers.  The amount in controversy exceeds $75,000, exclusive of interest and costs, as to each Plaintiff.

### A.   There Is Complete Diversity of Citizenship Between Each Plaintiff and Travelers

16.   Plaintiff Best Auto Repair, Inc. is a citizen of California because it is incorporated in California and has its principal place of business in Glendale, California.  Compl., ¶ 4; 28 U.S.C. § 1332(c)(1).

17.   Plaintiff Isaac Kahan Kashani, D.D.S., a Professional Dental Corporation d/b/a Lasting Impressions Dental Spa, is a citizen of California because it is incorporated in California and has its principal place of business in Encino, California. Compl., ¶ 5; 28 U.S.C. § 1332(c)(1).

18.   Plaintiff Jon M. Postajian, Doctor of Chiropractic, Inc., is a citizen of California because it is incorporated in California and has its principal place of business in Burbank, California.  Compl., ¶ 6; 28 U.S.C. § 1332(c)(1).

19.   Plaintiff Debby Paz d/b/a Pro Beauty by Debby, is a citizen of California because, on information and belief, it operates in Burbank, California, and its sole owner and operator is a citizen of California.  Compl., ¶ 7; 28 U.S.C. § 1332(c)(1).[3]

20.   Plaintiff Toroslan Enterprises, Inc., is a citizen of California because it is incorporated in California and has its principal place of business in Winnetka, California.  Compl., ¶ 8; 28 U.S.C. § 1332(c)(1).

21.   Plaintiff Vanrita Suit, Inc. d/b/a L.A. Suit Exchange is a citizen of California because it is incorporated in California and has its principal place of business in Torrance, California.  Compl., ¶ 9; 28 U.S.C. § 1332(c)(1).

22.   Plaintiff B. Deirmenjian, D.D.S., Inc. d/b/a Ponderosa Dental Group, Smiles West Compton, Smiles West Huntington Park, Smiles West LA Puente, Smiles

---

[3]  *See, e.g.*, *Connor v. Bart Guerrero Trucking*, 2019 WL 3025205, at *1–2 (W.D. Wash. July 11, 2019) (in diversity of citizenship analysis, sole proprietorship had citizenship of the single state in which it operated and in which the sole owner and operator resided).

West Los Angeles, Smiles West Lynwood, Smiles West Mission Hills, Smiles West Monebello, Smiles West Moreno Valley, and Smiles Van Nuys, is a citizen of California because it is incorporated in California and has its principal place of business in Glendale, California.  Compl., ¶ 10; 28 U.S.C. § 1332(c)(1).

23.     Plaintiff Sandra Deirmenjian, D.D.S, Inc. d/b/a Dental Wonderland is a citizen of California because it is incorporated in California and has its principal place of business in Glendale, California.  Compl., ¶ 11; 28 U.S.C. § 1332(c)(1).

24.     Plaintiff Deirmenjian Dentistry, Inc. d/b/a Smiles West Covina is a citizen of California because it is incorporated in California and has its principal place of business in Glendale, California.  Compl., ¶ 12; 28 U.S.C. § 1332(c)(1).

25.     Plaintiff Adore Nail Spa, Inc., is a citizen of California because it was incorporated in California and had its principal place of business in Riverside, California.  Compl., ¶ 13; 28 U.S.C. § 1332(c)(1).  According to Adore Nail Spa's publicly available filings with the State of California, this corporation's dissolution was filed on October 13, 2020.

26.     Plaintiff Thuy Tran, an individual, is a citizen of California residing in Riverside, California.  Compl., ¶ 14; 28 U.S.C. § 1332(a)(1).

27.     Plaintiff Afsaneh Zokaei, DDS, A Professional Corporation d/b/a Neighborhood Dental Group is a citizen of California because it is incorporated in California and has its principal place of business in San Diego, California.  Compl., ¶ 15; 28 U.S.C. § 1332(c)(1).

28.     Plaintiff M&F Development, LLC is a citizen of California for the purposes of diversity jurisdiction.  As a limited liability company, Compl., ¶ 16, M&F Development, LLC is considered a citizen of every state in which its owners or members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  According to M&F Development's publicly available filings with the State of California and on information and belief, M&F Development's owners or members are Fershid Faridnia, Shahram Faridnia, and Skahrokh Faridnia.  On

information and belief, Fershid Faridnia, Shahram Faridnia, and Skahrokh Faridnia are each citizens of and domiciled in California.

29.     Plaintiff The Wax Shop, Inc., is a citizen of California because it is incorporated in California and has its principal place of business in Los Angeles, California.  Compl., ¶ 17; 28 U.S.C. § 1332(c)(1).

30.     Travelers Casualty Insurance Company of America is a citizen of Connecticut because it is incorporated in Connecticut and its principal place of business is in Hartford, Connecticut.  *See* Compl., ¶ 18.

31.     The Travelers Indemnity Company of Connecticut is a citizen of Connecticut because it is incorporated in Connecticut and its principal place of business is in Hartford, Connecticut.  *See* Compl., ¶ 19.

32.     The citizenship of "DOES 1 to 50, inclusive," also named as defendants in this matter, should be disregarded for purposes of assessing jurisdiction.  28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").  Plaintiffs have pleaded no facts regarding Does 1–50:  whether they exist, who they are, where they live, or how they are related to this case.  *See McCabe*, 811 F.2d at 1339 (district court properly disregarded "100 Doe defendants" who were not "indispensable parties and served no other purpose than protecting the plaintiff under California pleading practice").

33.     Thus, there is complete diversity of citizenship as between Travelers and each Plaintiff.

**B.     The Amount in Controversy Exceeds $75,000 as to Each Plaintiff**

34.     Under 28 U.S.C. § 1332, diversity subject matter jurisdiction requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs."  This requirement is met.  A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014), and

if contested, a court will determine whether the threshold is met by a preponderance of the evidence, *id.* at 88; *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018).  In declaratory relief actions, "the amount in controversy is measured by the value of the object of the litigation."  *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017) (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)).  Such value is determined by "the pecuniary result to either party which the judgment would directly produce."  *Id.* (quotation marks and citation omitted).

35.    While Plaintiffs allege that they have collectively "suffered and continue to suffer substantial lost business income and other financial losses totaling millions of dollars," they neither address their individual losses, nor make a specific monetary demand for damages.  Compl., ¶ 47; *see also id.*, Prayer for Relief.  On a full and fair reading of the Complaint, the amount in controversy exceeds $75,000, exclusive of interest and costs, as to each Plaintiff.  Each of the following four factors independently satisfies the jurisdictional threshold for each Plaintiff.

36.    *First*, Plaintiffs each seek coverage for "extraordinary losses of business income."  Compl., ¶¶ 48, 104–16.  They allege that "[d]ue to the closure orders, as well as the presence of COVID-19, Plaintiffs have suffered and continue to suffer substantial lost business income and other financial losses totaling *millions of dollars*."  Compl., ¶ 47 (emphasis added).  One Plaintiff, Adore Nail Spa, dissolved during the pandemic.  As for the other Plaintiffs, based on publicly available sources and information provided by Plaintiffs to Travelers in connection with each insurance policy's issuance and/or renewal, each had pre-COVID annual sales and receipts or annual revenues that exceeded six or seven figures.  (Travelers will make this information available if requested by the Court or otherwise necessary.)  In addition to business income losses, the Complaint seeks "general and compensatory damages," and "economic and consequential damages."  *See* Compl., Prayer for Relief.

37.    "[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).  Taking the smallest construction of "millions of dollars," $2 million, if Plaintiffs' losses are anywhere close to equal, each Plaintiff has already lost nearly twice the federal jurisdictional threshold.  (Two million dollars divided fourteen ways amounts to $142,857.14.)  Plaintiffs' pleadings rule out any possibility of "legal certainty" that each could not recover at least $75,000.  *Id.* at 699.

38.    *Second*, while Plaintiffs' allegation of present losses alone exceed the jurisdictional threshold, Plaintiffs further seek a declaration of coverage "for the full amount of the losses incurred and *to be incurred* in connection with the covered business losses related to the closure orders during the necessary interruption of their business stemming from the COVID-19 pandemic."  Compl., ¶ 113(c) (emphasis added).  The State of California's current Stay Home order is in place "until further notice."[4]  Plaintiffs allege that "[g]iven the likely extended time period of the regional presence of COVID-19 cases, and the likely continued effect of the closure orders, Plaintiffs will almost certainly have similar insurance claims in the future," *id.*, ¶ 119, increasing potential alleged losses.  *See Chavez*, 888 F.3d at 417 (where a plaintiff alleges "future [losses]," it is appropriate to include all potential future losses in the amount in controversy); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (defendant may make reasonable assumptions in demonstrating amount in controversy).  Such expansive allegations of loss over such an extended period should reasonably be expected to exceed the $75,000 jurisdictional threshold.

---

[4]  See *About COVID-19 Restrictions*, CA.gov, https://covid19.ca.gov/stay-home-except-for-essential-needs/#blueprint (last visited Mar. 26, 2021); Executive Order N-60-20, https://www.gov.ca.gov/wp-content/uploads/2020/05/5.4.20-EO-N-60-20.pdf.

Travelers Defendants' Notice of Removal          11

39.    *Third*, Plaintiffs seek punitive damages and, based on similar cases litigated in California, those claimed damages alone could easily exceed $75,000 for each Plaintiff.  *See* Compl., Prayer for Relief.  Punitive damages arising from bad faith insurance claims are potentially recoverable under California law upon an adequate evidentiary showing, and may be included in calculating the jurisdictional amount.[5] *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *see* Cal. Civ. Code § 3294(a) (allowing punitive damages for "breach of an obligation not arising from contract").  "To establish probable punitive damages, [a] defendant may introduce evidence of jury verdicts in cases involving analogous facts." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).  Based on jury verdicts awarded in similar cases involving claims of insurance bad faith, a jury may award punitive damages well in excess of $75,000.  *See, e.g.*, *Palm Springs Pump v. Peerless Ins. Co.*, 2013 WL 1898801 (Cal. Super. Ct. Apr. 12, 2013) (jury awarded $3,500,000 in punitive damages (and $1,376,498 in lost profits) for insurance bad faith case in which insurer unreasonably delayed and mishandled claim for accidental damage to a drill rig, delaying payment for over six months for insured's loss of use and lost profits); *McCoy v. Progressive W. Ins. Co.*, 2007 WL 2068578 (Cal. Super. Ct. Mar. 29, 2007) (jury awarded $100,000 in punitive damages (and $17,175 in damages for breach of contract and $63,000 in damages for breach of implied covenant of good faith and fair dealing) for insurance bad faith case in which insurer repeatedly failed to allow or deny claim regarding insured's stolen car, until insured retained an attorney).

40.    *Fourth*, attorneys' fees—which Plaintiffs also seek—may be included in calculating the jurisdictional amount in bad faith insurance claims.  *See* Compl., Prayer for Relief; *Brandt v. Superior Court*, 37 Cal. 3d 813, 816–19 (1985).  In other bad faith cases litigated in California court, fee awards for successful plaintiffs have ranged

---

[5] Travelers denies that Plaintiffs are entitled to punitive damages or any other relief sought and reserves its rights to seek dismissal of such allegations, but these alleged damages are properly included in calculating the jurisdictional amount.

from upwards of $160,000 to $750,000.  *See Palm Springs Pump*, 2013 WL 1898801 (awarding $160,000 in attorneys' fees); *Major v. W. Home Ins. Co.*, 87 Cal. Rptr. 3d 556, 574 (Ct. App. 2009) (as modified) (affirming award of $189,000 in attorneys' fees); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d at 1005, 1022 (9th Cir. 2004) (affirming award of $750,000 in attorneys' fees).

## III.   THE GROSSLIGHT DEFENDANTS ARE FRAUDULENTLY JOINED BECAUSE THE CLAIMS AGAINST THEM ARE NOT RIPE

41.   The Grosslight Defendants are not party to any of the insurance contracts in dispute in this litigation and have no potential liability under those contracts.  The Grosslight Defendants' sole connection to this case is having secured the Deirmenjian Plaintiffs' policy.[6]  The Grosslight Defendants have no connection whatsoever with any of the other Plaintiffs (all of whom have requested dismissal of their claims against the Grosslight Defendants).

42.   Even the Deirmenjian Plaintiffs have not and cannot establish a cause of action against the Grosslight Defendants.  The Grosslight Defendants' joinder is

---

[6]   *Compare* Compl., Ex. H at 2 ("Grosslight Insurance Inc." named "agent or broker" for the single Office PAC policy issued to the Deirmenjian Plaintiffs), *with* Compl., Ex. B at 2 ("Builders & Trademens Ins." named "agent or broker" for the Garage Policy issued to Plaintiff Best Auto Repair); Compl., Ex. C at 2 ("Automatic Data Proc. Ins." named "agent or broker" for the Office PAC Policy issued to Plaintiff Isaac Kahan Kashani, D.D.S.); Compl., Ex. D at 2 ("Acjo Ins. Services Inc." named "agent or broker" for the Office PAC Policy issued to Plaintiff Jon M. Postajian, Doctor of Chiropractic, Inc.); Compl., Ex. F at 2 ("B&B Premier Ins. Sol." named "agent or broker" for the Office PAC Policy issued to Plaintiff Toroslan Enterprises, Inc.); Compl., Ex. G at 2 ("Insureon Solutions" named "agent or broker" for the Store PAC Policy issued to Plaintiff Vanrita Suit, Inc.); Compl. Ex. I, at 2 ("Penguin Ins. Services Inc." named "agent or broker" for the Business PAC Policy issued jointly to Plaintiff Adore Nail Spa and Plaintiff Thuy Tran); Compl., Ex. J at 2 ("USAA Insurance Agency In." named "agent or broker" for the Office PAC Policy issued to Plaintiff Afsaneh Zokaei, DDS, APC); Compl., Ex. K at 2 ("Blue Sky Ins. Agcy. Inc." named "agent or broker" for the Apartment PAC Policy issued to Plaintiff M&F Development, LLC); and Compl., Ex. L at 2 ("Mikel's Insurance SVCS" named "agent or broker" for the Business PAC Policy issued to Plaintiff The Wax Shop, Inc.).  Plaintiffs submitted a cover page, but no exhibit, for Plaintiff Derby Paz DBA Pro Beauty by Derby.  *See* Compl., Ex. E. Travelers' records reflect that the agent or broker was "Northeast Agency Ins."

fraudulent, diversity jurisdiction exists over this action, and this action is properly removed.

43.     "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe*, 811 F.2d at 1339.  Fraudulent joinder is established when "'a defendant shows that [another defendant] joined in the action cannot be liable on any theory.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)).

44.     Defendants "cannot be liable on any theory" when the claims against them are not ripe—and any claim that "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" is not ripe for review.  *Young v. State*, 2021 WL 1114180, at *46 (9th Cir. Mar. 24, 2021) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  Courts routinely recognize that claims against insurance agents or brokers before coverage has been litigated and determined are unripe—because such claims are "entirely based on contingent future events." *Monroe Guar. Ins. Co. v. Newtex Realty, LP*, 2019 WL 1261138, at *2 (N.D. Tex. Mar. 4, 2019).  This principle has already been applied to the context of Coronavirus-related business insurance coverage disputes.  *See Terry Black's Barbecue, LLC*, 2020 WL 6537230, at *4  (W.D. Tex. Nov. 5, 2020) (finding an insurance broker was fraudulently joined to a Coronavirus-related business insurance coverage dispute between insured and insurer).[7]

45.     In this case, each and every claim against the Grosslight Defendants melts away if Plaintiffs win their four initial coverage-related claims against Travelers.  Plaintiffs' conditional pleading runs throughout the Complaint from start to finish.

---

[7]  Ripeness aside, discussed *infra*, plaintiffs cannot argue at once that a policy exclusion should not apply, and that the insurance agent was negligent in procuring a policy containing that exclusion.  *See Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, 220 F. Supp. 3d 1008, 1022 (N.D. Cal. 2016).

*See, e.g.*, Compl., ¶ 55 ("Defendants represented that the policies contained coverage for their businesses under all circumstances, *or* Defendants failed to explain that certain situations, such as a virus, would not be covered and completely failed to explain virus exclusions.") (emphasis added).

46.    The negligence claim is expressly conditioned on a finding against coverage.  *See, e.g.*, Compl., ¶ 136 ("*To the extent* that coverage procured by Defendants for Plaintiffs does not provide coverage for the damages suffered as alleged in this Complaint, Defendants . . . were negligent.") (emphasis added).  The negligent misrepresentation claim is likewise expressly conditioned on a finding against coverage.  *See, e.g., id.*, ¶ 140 ("*If* Defendants' current position is that it has no obligation to cover Plaintiffs' losses is correct, then the representations Defendants made in selling the policies were, in fact, false . . . *If* Defendants' current position is to be believed") (emphasis added).  By the same logic, *if* the Court finds that Travelers' policies cover Plaintiffs' claims, there would remain no basis for Plaintiffs' other claims against the Grosslight Defendants—intentional misrepresentation, constructive fraud, unjust enrichment, or breach of fiduciary duty.[8]

47.    Here, each of Plaintiffs' "claim[s] against [the Grosslight Defendants] is unripe because it is entirely contingent on future events"—the resolution of Plaintiffs' four initial claims against Travelers regarding coverage.  *Monroe Guar. Ins. Co. v. Newtex Realty, LP*, 2019 WL 1261138, at *1 (N.D. Tex. Mar. 4, 2019), *report and recommendation adopted*, 2019 WL 1255045 (N.D. Tex. Mar. 19, 2019)  The Grosslight Defendants' "potential liability is thus based on a hypothetical factual scenario that has not occurred." *Id.*  Because even this potential liability is pure conjecture at this time, Plaintiffs' claims against the Grosslight Defendants are unripe. *Id.*

---

[8]  Explained *infra* at Part IV.A., the Grosslight Defendants separately have no role in the claims for declaratory and injunctive relief.

## IV. THE GROSSLIGHT DEFENDANTS ARE FRAUDULENTLY JOINED BECAUSE (EVEN IF THE CLAIMS AGAINST THEM WERE RIPE), THEY CANNOT BE LIABLE ON ANY THEORY

48.     The Grosslight Defendants "cannot be liable on any theory" because the claims against them are predicated on contracts to which the Grosslight Defendants are not party. *See United Comput. Sys.*, 298 F.3d at 762.  The Grosslight Defendants are not party to the insurance contract between the Deirmenjian Plaintiffs and Travelers, and they have no relationship whatsoever to the other nine insurance contracts at issue. Illustrated below, even the Deirmenjian Plaintiffs do not and cannot state a claim against the Grosslight Defendants for any of the causes of action in which they are named.  Of the eight claims raised against all Defendants, including the Grosslight Defendants, the claims for declaratory and injunctive relief seek measures in which the Grosslight Defendants could have no hand.  The remaining six tort claims are predicated on non-existent or heightened duties that the Grosslight Defendants did not owe to Plaintiffs.  There was no breach because there was no duty.  Further still, the majority of the tort claims sound in fraud, do not plead facts supporting a cognizable legal theory, and fail to meet California's heightened pleading standard for fraud-based claims.

### A. Plaintiffs Do Not and Cannot State a Claim for Declaratory or Injunctive Relief Against the Grosslight Defendants

49.     While all defendants are named in Plaintiffs' claims for declaratory and injunctive relief, those claims seek enforcement of a contract to which the Grosslight Defendants are not party.  As their Prayer for Relief elucidates, Plaintiffs do not actually seek any declaratory or injunctive relief vis-à-vis the Grosslight Defendants. Plaintiffs have failed to demonstrate that they have standing to sue the Grosslight Defendants for declaratory or injunctive relief.  *See, e.g.*, *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1427 (9th Cir. 1989) (holding that nondiverse defendants were fraudulently joined where plaintiffs were not parties to agreements with those defendants, failed to allege injury by those defendants, and had no standing to sue

them).  In short, the references to the Grosslight Defendants simply provide context for the insurance coverage dispute between Plaintiff and Travelers.  Because Plaintiffs "failed to state any cause of action against [the Grosslight Defendants]; their joinder to [Travelers] as defendant[] was [a] sham; their presence did not destroy diversity." *McCabe*, 811 F.2d at 1339.

50.     *Declaratory Relief.*  Plaintiffs bring their claim for declaratory relief, pursuant to California Code of Civil Procedure § 1060, against all Defendants. Compl., ¶¶ 104–16.[9]  To state a claim for declaratory relief, a plaintiff must "set[] forth facts showing the existence of an actual controversy relating to the legal rights and duties *of the respective parties* under a written instrument . . . and request[] that the rights and duties of the parties be adjudged by the court."  *Benjamin v. Wells Fargo Bank, N.A.*, 2011 WL 13220918, at *2 (C.D. Cal. Oct. 17, 2011) (emphasis added) (quoting *Wellenkamp v. Bank of Am.*, 21 Cal. 3d 943, 947 (1978)).  "The main requirement for declaratory relief is a present and actual controversy between the parties."  *Id.* (citing *City of Cotati v. Cashman*, 29 Cal. 4th 69, 80 (2002)).

51.     On the other hand, where a "[p]laintiff has failed to state any claims, [and] there is no actual and present controversy," the declaratory relief claim must be dismissed.  *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1038 (N.D. Cal. 2010).  When a defendant is uninvolved in a "present and actual controversy," then that defendant is fraudulently joined.  *See Daniels v. Am.'s Wholesale Lender*, 2011 WL 13225097, at *1 n.1 (C.D. Cal. Oct. 24, 2011) (complaint challenging default failed to state a claim against financial institutions other than the institution which executed the notice of default).

--------

[9]  Sitting in diversity and assessing fraudulent joinder, this Court should consider the underlying claim "under California law."  *McCabe*, 811 F.2d at 1339.  Looking to the declaratory judgment claim at issue, "[f]ederal courts 'have consistently applied California Code of Civil Procedure § 1060 rather than the federal Declaratory Judgment Act when sitting in diversity.'"  *D. Cummins Corp. v. U.S. Fid. & Guar. Co.*, 2014 WL 2211979, at *2 n.2 (N.D. Cal. May 28, 2014) (quoting *Schwartz v. U.S. Bank, Nat'l Ass'n*, 2012 WL 10423214, at *15 (C.D. Cal. Aug. 3, 2012)).

52.     Travelers does not dispute that the Grosslight Defendants played a role in securing the Deirmenjian Plaintiffs' policy.  But "[w]here a third party's rights and responsibilities cannot be altered by a court ruling, that party is not properly joined in a contractual dispute between two other parties *even where the third party's actions may have impacted the dispute*."  *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, 2020 WL 4500304, at *3 (C.D. Cal. Aug. 4, 2020) (emphasis added) (finding Los Angeles County Health Officer Muntu Davis was fraudulently joined to a coverage dispute).

53.     Here, the Grosslight Defendants have no authority to effect Plaintiffs' declarations, each of which concerns Travelers' coverage decisions.  Plaintiffs seek declarations that Plaintiffs' losses are covered by their policies; that Defendants' "blanket denial" of claims waives any defenses; that the policies obligate Defendants to pay the claims; that no policy exclusions apply; and that Plaintiffs' business income losses are covered losses.  *See* Compl., ¶ 113; *see also* Compl. Prayer for Relief ("For a declaration adopting each of Plaintiffs' contentions set forth in the above Causes of Action for Declaratory Relief.").  Because the Grosslight Defendants could not provide any of the relief sought (which could only be provided by Travelers), they are uninvolved in the "present and actual controversy," and thereby fraudulently joined. *See Daniels*, 2011 WL 13225097, at *1 n.1.  Because the Grosslight Defendants have neither "legal rights [nor] duties" "under [the] written instrument" at issue, the Grosslight Defendants have no rights or duties "[to] be adjudged by the court." *Benjamin*, 2011 WL 13220918, at *2 (quotation marks omitted).  This Court has repeatedly said as much where defendants have been fraudulently joined to Coronavirus-related business insurance coverage actions against Travelers.[10]

---

[10]  As judges in this Court have already ruled, specific to Travelers' identically-worded policies applied to COVID-19 business interruption coverage, non-parties cannot effect declaratory relief.  *See Travelers Casualty Insurance Company of America v. Geragos & Geragos*, No. 2:20-cv-04414-PSG-E (C.D. Cal. Aug. 12, 2020), ECF No. 22 ("[T]he action turns on a contract between Geragos and Geragos and Travelers, and Mayor Garcetti is not a party to that contract. . . .  [the claim] does
*(Cont'd on next page)*

54.     *Injunctive Relief.*  By the same token, the Grosslight Defendants could not begin to effectuate the injunctive relief Plaintiffs seek.  Plaintiffs assert that "Defendants wrongfully denied Plaintiffs' insurance claim" and "will almost certainly apply the same or similar erroneous interpretations of the policies to wrongfully deny coverage" in the future.  Compl., ¶ 119.  *See also* Compl., Prayer for Relief ("For injunctive relief enjoining and restraining Defendants' unlawful conduct as alleged herein, including but not limited to their unfair and unlawful business practices and their wrongful denials of coverage under the policies.").  Plaintiffs bring their claim for injunctive relief, pursuant to California's Business and Professions Code §§ 17200 *et seq.*, against all Defendants.  Compl., ¶¶ 117–20.  "To establish equitable grounds for [injunctive] relief, a claimant must show that he or she has no adequate remedy at law and that denial of the relief sought would cause immediate, irreparable injury." *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988).  Plaintiffs make no such showing relative to the Grosslight Defendants, and the Grosslight Defendants could not provide coverage under the policies or force Travelers to do so.  Plaintiffs therefore fail to state a claim for injunctive relief against the Grosslight Defendants.

55.     On the other hand, plaintiffs "fail[] to state a claim for injunctive relief" when bringing that claim against a party which "lacks [] authority" to effect that relief. *Von Staich v. Atwood*, 2011 WL 3319998, at *3 (C.D. Cal. Feb. 24, 2011), *report and recommendation adopted sub nom. Staich v. Atwood*, 2011 WL 3290414 (C.D. Cal. July 29, 2011) (plaintiff prisoner failed to state claim for injunctive relief against a state psychologist when the injunctive relief was directed toward future actions of a parole board, and the psychologist "lacked authority to dictate" that board's actions, despite working exclusively for the state prison system).

not seek any remedy from Mayor Garcetti"); *Mark's Engine Co. No. 28 Rest., LLC v. Traveler's Indem. Co. of Conn., et al.*, No. 2:20-cv-04423-AB-SK (C.D. Cal. July 27, 2020), ECF No. 39 (same); *10E, LLC v. Travelers Indemnity Co. of Connecticut et al.*, No. 2:20-cv-04418-SVW-AS (C.D. Cal. Aug. 28, 2020), ECF No. 38 (same).

56.     Plaintiffs' allegations as to coverage decisions do not and could not pertain to the Grosslight Defendants.  Because the Grosslight Defendants "lac[k] [] authority" to effect that relief, Plaintiffs fail to state an injunctive claim against them. *Von Staich*, 2011 WL 3319998, at *3.[11]  In Plaintiffs' injunctive relief claim, just as in their declaratory relief claim, the Grosslight Defendants are fraudulently joined because they are uninvolved in the "present and actual controversy."  *Daniels*, 2011 WL 13225097, at *1 n.1.

### B.     Under California Law, Breach of Fiduciary Duty Is Not A Cognizable Claim Against An Insurance Broker

57.     Plaintiffs bring a claim against all Defendants for breach of fiduciary duty.  *See* Compl., ¶¶ 121–26.  But "[u]nder California law," as acknowledged by the federal judiciary, "an insurance broker cannot be sued for breach of fiduciary duty." *Kin Wai Wu v. Mt. Hawley Ins.*, 2011 WL 5104469, at *3 (N.D. Cal. Oct. 27, 2011) (internal citation omitted); *see also Miniace v. Pac. Mar. Ass'n*, 2005 WL 2230149, at *10 (N.D. Cal. Sept. 13, 2005) ("This Court will not expand the doctrine of fiduciary duty to include insurance brokers, given that it has not been recognized by California courts.").

58.     In *Kin Wai Wu*, plaintiffs brought a claim for breach of fiduciary duty against fraudulently joined insurance agents, contending those agents had a duty to disclose purportedly insufficient coverage.  2011 WL 5104469, at *3.  The court disposed of the claim because "assertions do not present a cognizable legal theory

---

[11]  While Travelers maintains that its denial was rightful, as will be explained in the forthcoming Motion to Dismiss, the Grosslight Plaintiffs could not have any responsibility for coverage decisions made by Travelers on past or future insurance claims.

upon which the court may grant relief." *Id.* Equally here, Plaintiffs' claim for breach of fiduciary duty cannot stand against the Grosslight Defendants.

### C. The Remaining Claims Are Predicated On Heightened Duties the Grosslight Plaintiffs Did Not Owe

59.   The law does not deal in premonitions. By Plaintiffs' own words, the Coronavirus and its economic impact were "unforeseen." Compl., ¶ 1. California's state and federal courts have already held that insurance agents had no duty to foresee a crisis such as the Coronavirus, and thereby owed no duty to highlight policies' virus exclusions or offer alternate coverage (even if it were available) which insureds did not request. Plaintiff's remaining claims for constructive fraud, unjust enrichment, intentional misrepresentation, negligent misrepresentation, and negligence each fails to state a claim against the Grosslight Defendants because each tort fails to articulate a duty breached.

60.   Just last week, a Riverside County judge sustained an insurance broker's demurrer to an insured's negligence claim, holding that "there is no legitimate argument that insurance brokers such as [the defendant] should have anticipated the COVID-19 pandemic and its far-reaching impact on the business world." *VStyles Inc. v. Continental Casualty Co. et al.*, No. RIC2003415 (Cal. Super. Ct. Mar. 25, 2021). In the Central District of California, an insurance agency was recently deemed fraudulently joined to a coverage action because, among other reasons, "even if [the agency] was the foremost expert in business interruption insurance for [plaintiff's specific business], this expertise would not allow them to predict Plaintiffs would require coverage for a once-in-a-lifetime viral pandemic causing government-mandated business closures." *Casa Colina, Inc. v. Hartford Fire Ins. Co.*, 2020 WL 7388426, at *4 (C.D. Cal. Dec. 15, 2020). The same is true in this case. Under settled California law, insurance agencies and agents have limited duties to their clients. By the threadbare allegations presented, and the "unforeseen" nature of the Coronavirus which Plaintiffs could not begin to amend around, the Grosslight Defendants upheld

their limited duty here.  While California's courts acknowledge three circumstances in which insurance agents may have heightened duties, none applies here.

### 1. To the Extent the Grosslight Defendants Owed a Duty to the Deirmenjian Plaintiffs, That Duty Was Limited

61.  In California, a broker has a general duty to exercise reasonable care, but that duty is limited to procuring an insurance policy as requested by the insured.  *Jones v. Grewe*, 189 Cal. App. 3d 950, 954 (1987).  "In California, an insurance agent ordinarily only has an 'obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured.'" *Casa Colina*, 2020 WL 7388426, at *2 (quoting *Butcher v. Truck Ins. Exch.*, 77 Cal. App. 4th 1442, 1461 (2000)).  Under this limited duty, the broker-client "relationship imposes no duty on the agent to advise the insured on specific insurance matters." *Jones*, 189 Cal. App. 3d at 954.

62.  The Complaint hardly explains its tort claims against the Grosslight Defendants.  On a generous reading of the full Complaint, Plaintiffs suggest that the Grosslight Defendants represented that Travelers' policy provided full general coverage "under all circumstances," and they did not call attention to the virus exclusion.  *See* Compl., ¶ 55.  The Complaint alleges: "Defendants represented that the policies contained coverage for their businesses under all circumstances, *or* Defendants failed to explain that certain situations, such as a virus, would not be covered and completely failed to explain virus exclusions." *Id.* (emphasis added).  This pleading style alone is disallowed under California's standards.  An insured "may not simultaneously argue that [an] exclusion does not apply to [the insured], and that [the agent] was somehow negligent for procuring a policy containing the exclusion or for failing to inform [the insured] thereof.  The insurance agent's duty of care does not extend this far." *Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, 220 F. Supp. 3d 1008, 1022 (N.D. Cal. 2016).  Regardless, neither alternative would have breached California's typical expectation of insurance agents.

63.  The Complaint's assertion that unspecified "Defendants" "represented

that the policies contained coverage for their businesses under all circumstances" is unhelpfully vague.  California law, however, is not.  "[C]ourts have consistently found generalized statements that insureds would receive 'adequate,' 'sufficient,' or 'full' coverage do not implicate additional agent duties."  *Casa Colina*, 2020 WL 7388426, at *2.  Assurance of "full and adequate insurance" is a generalized statement hardly out of step with insurance agents' regular duties—and "clearly insufficient to amount to a misrepresentation that would trigger a heightened duty."  *Id.* at *3 (quotation marks omitted) (discussed *infra*).

64.     As for Plaintiffs' assertion that unspecified "Defendants" "failed to explain that certain situations, such as a virus, would not be covered and completely failed to explain virus exclusions," Compl., ¶ 55, "[t]he insurance agent's duty of care does not extend this far."  *Hartford Cas. Ins. Co.*, 220 F. Supp. 3d at 1022 (holding insurance agent had no duty to point out policy exclusions).  But the Complaint makes no allegation that Plaintiffs expressly requested virus coverage.  Thus, the Grosslight Defendants had no standard duty to highlight the virus exclusion—or anything else regarding sufficiency of coverage.  *See also Casa Colina*, 2020 WL 7388426, at *2 ("California law does not generally require insurance agents to advise insureds regarding the sufficiency of their coverage.").

### 2. The Grosslight Defendants Procured the Insurance the Deirmenjian Plaintiffs Allegedly Requested

65.     The Complaint fails to identify any specific communication between any Plaintiff and Defendant—let alone an express desire for specific coverage provisions passed from the Deirmenjian Plaintiffs to the Grosslight Defendants.  Instead, the Complaint paints in hazy strokes as to what unspecified "Defendants" "represented" to unspecified "Plaintiffs," Compl., ¶ 135 (negligence); *id.*, ¶ 140 (negligent misrepresentation), alleging only that Defendants were "ready and willing to perform the professional service of procuring insurance coverage for Plaintiffs," *id.*, ¶ 135.  The Deirmenjian Plaintiffs do not allege that they sought virus coverage (even if such

coverage were available) or that the Grosslight Defendants failed to procure standard property insurance coverage including business interruption coverage; to the contrary, the Deirmenjian Plaintiffs are seeking coverage under such policies.

66.     Where, as here, a plaintiff requests coverage in general terms, and receives that coverage, there is no negligence. *Kin Wai Wu*, 2011 WL 5104469, at *3.[12]  In procuring an all-risk policy for the Deirmenjian Plaintiffs, the Grosslight Defendants met their "obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Casa Colina*, 2020 WL 7388426, at *2.

### 3.    The Grosslight Defendants Owed No Elevated Duty of Care to Plaintiff Under California Law

67.     Insurance agents generally do not have "a duty to volunteer to an insured that the latter should procure additional or different insurance coverage." *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 927 (1997).  The duty is elevated "when—but only when" (1) the agent misrepresents the extent or scope of the coverage being offered or provided, (2) the insured makes a specific inquiry about a particular type of coverage, or (3) the agent holds itself out as an expert in the field of insurance being sought by the insured. *Id.* at 927.  Federal judges in California have declined to find heightened duties in cases pled with far greater specificity. *See, e.g.*, *Finkelstein v. AXA Equitable Life Ins. Co., et al.*, 2017 WL 10443167, at *3 (N.D. Cal. June 21, 2017) (no heightened duty where agent told client that a specific policy was "one of the best"); *Hartford Cas. Ins. Co.*, 220 F. Supp. 3d at 1018 (generalized statements regarding

---

[12] *See also Fitzpatrick v. Hayes*, 57 Cal. 4th 916, 929–31 (1997) (court affirmed summary judgment on a failure to procure theory because plaintiffs only spoke to the broker defendant about wanting to get coverage in the most basic terms, and not a specific request for a particular type of coverage); *Dairy Am., Inc. v. New York Marine & Gen. Ins. Co.*, 2010 WL 1328740, at *8 (E.D. Cal. Apr. 1, 2010) (grant of summary judgment to broker in insurance dispute arising from losses caused by Hurricane Katrina where plaintiff never specifically requested that the broker procure a policy that covered products already in transit).

1   commercial umbrella insurance on an agency's website did not constitute "holding

2   out" of special expertise).

###### a.   Plaintiffs allege neither that they specifically inquired about virus coverage, nor that the Grosslight Defendants made affirmative statements regarding virus coverage.

68.   California's first instance of heightened duty, when "the agent

misrepresents the nature, extent or scope of the coverage being offered or provided (as

in *Free, Desai* and *Nacsa*)," does not apply.  *Fitzpatrick*, 57 Cal. App. 4th at 927.[13]

Within the context of agents advising businesses on insurance in advance of the

Coronavirus, an agent's assertion that Plaintiffs would receive "full and adequate

insurance" is a "generalized statement [that is] clearly insufficient to amount to a

misrepresentation that would trigger a heightened duty."  *Casa Colina*, 2020 WL

7388426, at *3.  On its most generous reading, Plaintiffs' Complaint offers only that—

an imprecise "generalized statement" that unspecified "Defendants represented that the

policies contained coverage for their businesses under all circumstances."  Compl.,

¶ 55.  Plaintiffs' allegation is "clearly insufficient" to "trigger a heightened duty."

*Casa Colina*, 2020 WL 7388426, at *3.  Indeed, Plaintiffs contend that there *is*

coverage, Compl., ¶ 84, but that "Defendants" (presumably Travelers) had a policy

"not [to] pay any claims during a pandemic."  *Id.*

###### b.   Plaintiffs allege no "request or inquiry" "for a particular type or extent of coverage," let alone foreseeable harm.

69.   The second instance of heightened duty, when "there is a request or

inquiry by the insured for a particular type or extent of coverage (as in *Westrick*)," is

equally inapplicable.  *Fitzpatrick*, 57 Cal. App. 4th at 927.  Applied to this Coronavirus

context, "Plaintiffs would need to allege that they specifically requested a policy that

would provide coverage in the event their business was interrupted by a viral outbreak,

---

[13]  The Ninth Circuit has adopted the *Fitzpatrick* analysis, affirming that an insurance agent held no heightened duty when he did not misrepresent a policy, fail to procure requested coverage, or hold himself out as possessing special expertise.  *See Cecena v. Allstate Ins. Co.*, 358 F. App'x 798, 801 (9th Cir. 2009).

or directly inquired about whether their policy provided such coverage." *Casa Colina*, 2020 WL 7388426, at \*3.  Plaintiffs make no such allegation here.

70.    In *Westrick*, based on multiple detailed conversations with his long-standing insurance agency's agents, an insured believed that his welding truck would be insured to travel on a specific day. *Fitzpatrick*, 57 Cal. App. 4th at 923–24. Ultimately, "[i]t wasn't, an accident occurred, and the litigation followed." *Id.* at 924. The court held that the insured's "request for insurance, his previous questions and long relationship with the agency, *and the foreseeability of harm*, obligated [the agent] to respond to the request with further inquiries." *Id.* at 924 (emphasis added).[14]

71.    Here, Plaintiffs fail to allege having made any specific inquiry—let alone foreseeable harm relative to a specific inquiry.  Plaintiffs cannot make any such assertion.  By the very first sentence of the Complaint, this harm was "unforeseen." Compl., ¶ 1.

        **c.**    **Plaintiffs fail to allege any manner in which the Grosslight Defendants held themselves out as experts, let alone that any perceived expertise was sufficiently specific to trigger a heightened duty.**

72.    *Fitzpatrick*'s final instance of heightened duty arises when "the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured (as in *Kurtz*)." *Fitzpatrick*, 57 Cal. App. 4th at 927.  Where Plaintiffs' allegations that Defendants touted expertise are conclusory at best, virtually no amount of expertise would trigger a heightened duty here.  Indeed, "even if [the Grosslight Defendants were] the foremost expert in business interruption insurance for [Plaintiffs' businesses], this expertise would not allow them to predict Plaintiffs would require

---

[14] "*Westrick* simply stands for the proposition that if an insured directly inquires about whether their policy provides a specific type of coverage, an agent has a duty to explain any related limiting provisions." *Casa Colina*, 2020 WL 7388426, at \*3. "Westrick does not create a general affirmative duty to warn of potential coverage gaps or exclusions absent a specific inquiry." *Id.*

coverage for a once-in-a-lifetime viral pandemic causing government-mandated business closures." *Casa Colina*, 2020 WL 7388426, at *4.

73.     In *Kurtz*, insurance brokers held out expertise in a specific Medicare exemption for employers' group insurance. *Fitzpatrick*, 57 Cal. App. 4th at 925, *citing Kurtz, Richards, Wilson & Co. v. Ins. Communicators Mktg. Corp.*, 12 Cal. App. 4th 1249, 1255 (1993). The brokers took affirmative steps to have the insured employer (unknowingly) misrepresent (an inapplicable) Medicare exemption to the insurer. *Kurtz*, 12 Cal. App. 4th at 1255. When the insured realized the misrepresentation and sought to rescind the policy, the insured filed a cross-complaint against the broker. Ultimately, the court acknowledged a "special duty assumed when [the brokers] held themselves out as experts on [the Medicare exemption]." *Fitzpatrick*, 57 Cal. App. 4th at 926 (cleaned up).

74.     While "holding out" expertise requires specific communication, and communications like website advertisements can be insufficient to trigger the heightened duty, Plaintiffs allege no "holding out" activity whatsoever. The Complaint alleges merely that "Defendants sold the policies to Plaintiffs. In the process, they held themselves out to be experts in the field of insurance." Compl., ¶ 131 (negligence). And, "Defendants assumed additional duties by express agreement and/or holding themselves out as an expert in procuring business interruption coverage." *Id.*, ¶ 132 (negligence).

75.     Plaintiffs make no attempt to allege *how* the Grosslight Defendants held themselves out as business interruption coverage experts. In California, "holding out" expertise is assessed by the "totality of the circumstances." *Murray v. UPS Cap. Ins. Agency, Inc.*, 54 Cal. App. 5th 628, 648 (2020). Specific allegations of statements on a website do not constitute "holding out." *Hartford Cas. Ins. Co.*, 220 F. Supp. 3d at 1018. Indeed, "the term 'holding out' encompasse[s] more than marketing tools (advertising and brochures)." *Casa Colina*, 2020 WL 7388426, at *3–4 (quoting *Murray*, 54 Cal. App. 5th at 648). Plaintiffs fail to allege that much.

76.     And even if, *arguendo*, Plaintiffs sufficiently alleged that the Grosslight Defendants "held out" any expertise, "business interruption coverage" is too broad a category to trigger a heightened duty of care.  California courts require more— something akin to the specificity of a single Medicare exemption in *Kurtz*.  *Fitzpatrick*, 57 Cal. App. 4th at 926.  In *Casa Colina*, even the more specific allegation of agents "tout[ing] their expertise at insuring such facilities and providing *business interruption insurance*" did not trigger a heightened duty.  *Casa Colina*, 2020 WL 7388426, at \*4 (emphasis added).

77.     Here, as in *Casa Colina*, "none of the exceptions to the general rule that agents have no duty to advise the insured on specific insurance matters are implicated by Plaintiffs' Complaint . . . In other words, 'there is no possibility that [Plaintiffs] could prevail on any cause of action [they] brought against [the Grosslight Defendants].'"  *Id.* at \*5.

78.     Removal is therefore proper because Plaintiffs have not stated a cause of action against the fraudulently joined Grosslight Defendants.  *See Ritchey*, 139 F.3d at 1318.

### D.     The Complaint Does Not State a Cognizable Fraud Claim

79.     In California, "intentional and negligent misrepresentation" "are a species of fraud."  *Wilson v. Household Fin. Corp.*, 2013 WL 1310589, at \*4 (E.D. Cal. Mar. 28, 2013); *see also Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166–67 (2016) (same).  Thus, Plaintiffs' claims for constructive fraud, intentional misrepresentation, and negligent misrepresentation are each based in fraud.

80.     Only in certain limited circumstances (not present here) does an insurance agent or broker have a duty that could give rise to a misrepresentation claim.  "In cases where courts found agents assumed additional duties" in this regard, "the insureds made specific factual inquiries of the agents, and the agents responded with specific factual representations."  *Casa Colina*, 2020 WL 7388426, at \*2 (citation and internal quotation marks omitted).  "Conversely, courts have consistently found generalized

statements that insureds would receive 'adequate,' 'sufficient,' or 'full' coverage do not implicate additional agent duties." *Id.* (citation and internal quotation marks omitted).  Here, the facts alleged by Plaintiffs fail to implicate the exception to the general rule that an insurance agent or broker cannot be liable on a misrepresentation-based theory of liability.  Similarly, in *Kin Wai Wu,* the Northern District of California declined to remand an action in which all the causes of action against the fraudulently joined broker defendant—including one for misrepresentation—failed as a matter of law.  2011 WL 5104469, at *3.

81.    Moreover, Plaintiffs fail to plead any of their fraud-based claims with heightened particularity as required.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).  "The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made." *Daniels*, 246 Cal. App. 4th at 1166–67.

82.    Notably, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" *Swartz*, 476 F.3d at 764–65, *quoting Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).  This standard is rooted in Federal Rule of Civil Procedure 9(b), which "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764–65 (cleaned up).

83.    Here, Plaintiffs have not alleged any specific action or encounter with the Grosslight Defendants—let alone "how, when, where, to whom, and by what means the representations were made." *Daniels*, 246 Cal. App. 4th at 1166–67.  As to

Defendant Grosslight Insurance Incorporated, Plaintiffs must—and do not—"allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made." *Id.* And in the present "context of a fraud suit involving multiple defendants," Plaintiffs must—and do not—"identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 764–65, *quoting Moore*, 885 F.2d at 541. Because Plaintiffs fall short of this "minimum" standard for pleading fraud, their claims for constructive fraud, intentional misrepresentation, and negligent misrepresentation each fail for insufficiently specific pleading. *Swartz*, 476 F.3d at 764–65.

### E.   Plaintiffs Cannot Defeat Removal by Amending Their Complaint to Add New Claims Against the Grosslight Defendants

84.   "[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal[.]" *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998). Thus, when evaluating fraudulent joinder, courts do not consider possible claims or causes of action that were not alleged against the sham defendant in the removed complaint. *See Kruso*, 872 F.2d at 1426 n.12 (the court "confine[d] [its] review to the facts alleged in the original complaint" and refused to consider allegations in a "Proposed First Amended Complaint" which attempted to state claims against the sham defendants); *see also Health Pro Dental Corp. v. Travelers Prop. Cas. Co. of Am.*, 2017 WL 1033970, at *5 n.6 (C.D. Cal. Mar. 17, 2017) ("The Court declines to consider causes of action that were not pleaded in the operative complaint to determine whether Baker is a sham defendant."); *Goens v. Adams & Assocs.*, 2017 WL 3167809, at *4 (E.D. Cal. July 26, 2017) ("The court, however, should only consider facts alleged in the operative complaint, rather than causes of action or facts which could be included in an amended complaint."); *Altman v. HO Sports Co.*, 2009 WL 2590425, at *3 (E.D. Cal. Aug. 20, 2009) ("[T]he

propriety of removal is determined by the complaint as it existed at the time of removal.").

85.     At the time of removal, Plaintiffs make no ripe, let alone colorable claim against the Grosslight Defendants.  Therefore, they establish no controversy against the Grosslight Defendants.  Any attempt by Plaintiffs to create new claims against the Grosslight Defendants would be irrelevant to this removal analysis.  *See Kruso*, 872 F.2d at 1426 n.12.

86.     Because Plaintiffs' Complaint does not articulate a ripe or actionable claim against the Grosslight Defendants, because the declaratory and injunctive relief sought are predicated on insurance contracts to which the Grosslight Defendants are not parties, and because the remaining tort claims are premised on a duty not required under California law, the Grosslight Defendants' joinder is fraudulent and does not defeat diversity.

## V.    VENUE

87.     The United States District Court for Central District of California is the federal judicial district in which the Los Angeles County Superior Court sits.  This action was originally filed in the Los Angeles County Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also id.* § 1441(a).

## VI.    CONCLUSION

88.     For the foregoing reasons, Travelers respectfully states that this action, previously pending in the Superior Court of the State of California for the County of Los Angeles, is properly removed to this Court, and Travelers respectfully requests that this Court proceed as if this case had been originally filed in this Court.

1

Dated:  April 2, 2021

GIBSON, DUNN & CRUTCHER LLP

2

By:  */s/ Deborah L. Stein*

3

Deborah L. Stein, SBN 224570
    dstein@gibsondunn.com

4

Richard J. Doren, SBN 124666
    rdoren@gibsondunn.com

5

Theodore J. Boutrous Jr., SBN 132099
    tboutrous@gibsondunn.com

6

333 South Grand Avenue

7

Los Angeles, CA 90071-3197
Tel.:  213.229.7000

8

Fac.:  213.229.7520

9

*Attorneys for Defendants Travelers Casualty*

10

*Insurance Company of America and The*
*Travelers Indemnity Company of Connecticut*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28