JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEST AUTO REPAIR, INC., et al., <br><br>　　　　　　Plaintiffs, <br><br>　　v. <br><br> TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, et al., <br><br>　　　　　　Defendants. | Case No. 2:21-cv-02874-FLA (PDx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. 8]** |

## RULING

Before the court is Defendants Travelers Casualty Insurance Company of America and The Travelers Indemnity Company of Connecticut's (collectively, "Travelers" or "Defendants") Motion to Dismiss Plaintiffs' claims ("Motion").  Dkt. 8.  On August 5, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for August 13, 2021.  Dkt. 40; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court grants the Motion and DISMISSES the action without leave to amend.

## BACKGROUND

Plaintiffs[1] are fourteen businesses insured with Defendants under eleven different insurance policies. Dkt. 1-4 ("Compl.") ¶¶ 4–17. Plaintiffs seek coverage for losses related to the interruption of their businesses caused by the COVID-19 pandemic and related governmental closure orders. *See* Compl. ¶ 1.[2] Each of the applicable policies has been attached to the Complaint. *See id.* Exs. A–L ("Policies").[3] The relevant provisions of the Policies are all identical. *E.g.*, Dkt. 9 ("Mot. Br.") at 5 n. 4.

Plaintiffs filed the Complaint in Los Angeles Superior Court on January 15, 2021, asserting claims for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) bad faith denial of insurance claim; (4) unfair business

---

[1] Plaintiffs are (1) Best Auto Repair; (2) Isaac Kahan Kashani, D.D.S. dba Lasting Impressions Dental Spa; (3) Jon M. Postajian, Doctor of Chiropractic, Inc.; (4) Debby Paz dba Pro Beauty by Debby; (5) Toroslan Enterprises, Inc.; (6) Vanrita Suit, Inc. dba L.A. Suit Exchange; (7) B. Deirmenjian, D.D.S., Inc. dba Ponderosa Dental Group (among others); (8) Sanda Deirmenjian, D.D.S., Inc. dba Dental Wonderland; (9) Deirmenjian Dentistry, Inc. dba Smiles West Covina; (10) Adore Nail Spa; (11) Thuy Tran; (12) Afsaneh Zokaei, DDS dba Neighborhood Dental Group; (13) M&F Development, LLC; and (14) The Wax Shop, Inc. Compl. ¶¶ 4–17.

[2] Although the Complaint alleged Plaintiffs suffered losses "[d]ue to the closure orders, as well as the presence of COVID-19," they argue in their Opposition that "[n]o Order was issued related to a virus actually being present at, or even around, Plaintiffs' properties," and that "Plaintiffs' losses flow from the government's wide-sweeping reaction to a pandemic – the government Orders – *not* the virus." Dkt. 23 ("Opp'n") at 19–20 (emphasis in original); *see also id.* at 20 ("The Court should reject Defendants' claim that Plaintiffs' losses were caused by the virus and not the Orders."). Plaintiffs, thus, concede that their claims are not based on losses or damage due to the actual, physical presence of the COVID-19 virus on their properties.

[3] Defendants submit full copies of the Policies for the court's consideration and request the court find these documents incorporated by reference into the Complaint. Dkt. 10. Plaintiffs did not file an objection to the request. *See* Opp'n. The court, therefore, finds the full copies of the Policies are incorporated by reference into the Complaint for purposes of the subject Motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)

practices in violation of the California Business and Professions Code § 17200; (5) intentional misrepresentation; (6) constructive fraud; (7) unjust enrichment; (8) declaratory relief; (9) injunctive relief; (10) breach of fiduciary duty; (11) negligence; and (12) negligent misrepresentation. Defendants removed this action to this court on April 2, 2021. *Id*.

The Motion has been fully briefed, and the court has already concluded that it has diversity jurisdiction over the action. Dkt. 31. The parties have also filed multiple notices of supplemental authority and responses thereto, which the court has reviewed and considered. Dkts. 35, 39, 41–43, 51.

## DISCUSSION

### I. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of claims asserted in a complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted). When evaluating a

complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it considers evidence outside the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*

**II.  Analysis**

The parties agree that California state law applies to the substantive issues in this diversity action. Mot. Br. 7 n. 6; Opp'n 6 n. 2. Under California law, the interpretation of an insurance policy is a question of law and "subject to the ordinary rules of contractual interpretation." *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 847 (9th Cir. 2020). While the state of the law on insurance

coverage for COVID-19 related closures may have been less clear when this action was filed, the Ninth Circuit and California Courts of Appeal have subsequently issued rulings in actions involving similar insurance policies, that have resolved many of the issues raised in this Motion. *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890–92 (9th Cir. 2021); *Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688, 711–12 (2021), *review denied* (Mar. 9, 2022); *Musso & Frank Grill Co. v. Mitsui Sumitomo Ins. USA Inc.*, 77 Cal. App. 5th 753, 758–60 (2022).

      Plaintiffs bring four sets of claims in this action. In the first, second, third, and fourth causes of action, Plaintiffs contend they purchased comprehensive commercial liability and property insurance from Defendants, which included "business income with extra expense coverage for the loss, business income and extra expense coverage from dependent property coverage, and 'civil authority' coverage." Compl. ¶¶ 46, 59. According to Plaintiffs, Defendants breached their contractual duties under the Policies by denying Plaintiffs' insurance claims for business income losses caused by the closure orders, "without even the slightest [sic] of an investigation." *Id.* ¶¶ 47, 60.

      In the sixth, tenth, and eleventh causes of action, Plaintiffs allege Defendants owed "fiduciary and quasi-fiduciary duties to Plaintiffs, including duties of loyalty, due care, good faith, and fair dealing in connection with their actions under the policies," as well as additional duties to place business interruption insurance coverage for Plaintiffs, because they "undertook the obligations to place insurance coverage for Plaintiffs and to assist with any questions or concerns [they] had about the policies" and made representations that Defendants were "registered, licensed, and authorized insurance brokers." *Id.* ¶¶ 92–93, 122-24, 131–35.[4] According to

---

[4] This set of allegations and claims appear to be directed toward former Defendants Grosslight Insurance, Inc. and Gilbert F. Grosslight ("Grosslight Defendants"), who are identified as insurance brokers in the Complaint. Compl. ¶¶ 20–21. The Grosslight Defendants were dismissed from the action on May 28, 2021. *See* Dkt. 26. Plaintiffs do not plead any facts to suggest that the remaining defendants, Travelers,

Plaintiffs, Defendants breached these duties by acting in their own interests rather than that of Plaintiffs and by making false, misleading, and deceptive misrepresentations and omissions regarding the Policies. *Id.* ¶¶ 93, 124, 136.

Plaintiffs' fifth and twelfth causes of action for intentional and negligent misrepresentation allege that "Defendants committed actionable fraud against Plaintiffs by way of affirmative misrepresentations and the concealment of material facts," regarding the scope of the Policies. *Id.* ¶¶ 84, 139–40.

Lastly, Plaintiffs' seventh cause of action for unjust enrichment, eighth cause of action for declaratory relief, and ninth cause of action for injunctive relief are dependent claims based on the underlying conduct alleged. *See id.* ¶¶ 97–137.

The court will address each set of claims in turn.

**A.     The First, Second, Third, and Fourth Causes of Action for Denial of Coverage**

Plaintiffs' first, second, third, and fourth causes of action and portions of the fifth and twelfth causes of action are based on Defendants' denial of coverage under the Policies. Defendants move to dismiss these claims on two primary grounds. Mot. Br. 1–2. First, Defendants argue that Plaintiffs fail to allege facts to plausibly establish their losses were covered under the Business Income, Extra Expense, or Civil Authority provisions of the Policies. *Id.* Second, Defendants argue that Plaintiffs are not entitled to coverage because the Policies contain an explicit "Virus Exclusion" that precludes coverage for losses resulting from any virus "that induces or is capable of inducing physical distress, illness, or disease." *Id.* at 15–19.

/ / /

/ / /

/ / /

---

are insurance brokers or that they undertook any duties to place insurance coverage for Plaintiffs. *See* Compl. ¶¶ 18-19 (identifying Travelers only as insurers).

### 1. Business Income, Extra Expense, and Civil Authority Coverage

To be entitled to coverage under the Business Income and Extra Expense provisions of the Policies, Plaintiffs must demonstrate that they suffered "direct physical loss of or damage to" the insured property. *E.g.*, Compl. Ex. A at 112–14. Similarly, the Civil Authority provision only provides coverage for business losses "caused by action of civil authority that prohibits access to the described premises," that was taken "due to <u>direct physical loss of or damage to property</u> at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss." *Id.* at 126 (emphasis added).

Binding appellate authority has interpreted the phrase "direct physical loss of or damage to" property to require "distinct, demonstrable, physical alteration of the property." *Mudpie*, 15 F.4th at 890–92 (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)). The Ninth Circuit and the California Court of Appeal have both recognized that business losses resulting from a government closure order do not qualify as "direct physical loss of or damage to" property. *Id.* at 892–93; *Inns-by-the-Sea*, 71 Cal. App. 5th at 712 ("[T]he [San Mateo and Monterey County] Closure Orders were issued to prevent the spread of the pandemic, not because of any direct physical loss of or damage to property."). Indeed, the California Court of Appeal noted in April 2022 that "[a]t this point, there is no real dispute. Under California law, a business interruption policy that covers physical loss and damages does not provide coverage for losses incurred by reason of the COVID-19 pandemic." *Musso & Frank*, 77 Cal. App. 5th at 760.

Plaintiffs argue that *Mudpie* and similar cases are distinguishable because, unlike the plaintiffs in the cases where coverage was denied, Plaintiffs here have "clearly and unequivocally alleged that the COVID-19 virus caused real physical loss and damage to the Plaintiffs' Properties." Dkt. 42 (Pls.' Reply to Defs.' 2nd Notice of Suppl. Authority Br.) at 1–2 (citing Compl. ¶¶ 34–43). Plaintiffs cite cases including

*Kornoff v. Kingsburg Cotton Oil Co.*, 45 Cal. 2d 265 (1955), to argue that courts have recognized that a defendant's deposit of microscopic particles on a plaintiff's property constitutes a trespass. Dkt. 42 at 2–3. According to Plaintiffs, COVID-19 should likewise be considered a physical contamination, similar to a gas leak or noxious substance, such that its presence on Plaintiffs' properties constituted a physical alteration under California law. *Id.* The court disagrees.

Plaintiffs' cited cases concern the question of whether microscopic particles could constitute an intrusion or interference for purposes of a trespass claim. *See* Dkt. 42 at 2–3. These cases are inapposite to the question of whether a business loss caused by a governmental closure order related to the COVID-19 pandemic can constitute "direct physical loss of or damage to property" sufficient to trigger insurance coverage under California law. The Ninth Circuit and California Courts of Appeal have held that it cannot. *Mudpie*, 15 F.4th at 890–92 (holding the term "direct physical loss of or damage to" property requires "distinct, demonstrable, physical alteration of property" and that business losses due to government closure orders did not qualify); *Inns-by-the-Sea*, 71 Cal. App. 5th at 714–15 (allegations that COVID-19 attach to and adhere on surfaces and materials were insufficient to state a claim under business income or civil authority coverage provisions since "(1) [policyholder's] suspension of operations was caused by the [Closure] Orders, not by any physical damage to property, and (2) mere loss of use of real property to generate income does not give rise to coverage").[5]

---

[5] In *Inns-by-the-Sea*, 71 Cal. App. 5th at 704–05, the court noted that "it could be possible, in a hypothetical scenario, that an invisible airborne agent would cause a policyholder to suspend operations because of direct physical damage to property." The court, however, also clearly indicated that any governmental closure orders were incurred as a result of orders issued "in an attempt *to prevent the spread* of the COVID-19 virus," rather than "due to the direct physical loss of or damage to any property," as would be required for civil authority coverage to apply. *Id.* at 711-12 (emphasis in original, internal quotation marks omitted); *id.* at 710 n. 21 ("[C]ase law

8

Here, as in *Inns-by-the-Sea*, 71 Cal. App. 5th at 704–05, Plaintiffs do not allege they suspended operations because COVID-19 was physically present at any specific property. *See generally* Compl. To the contrary, Plaintiffs expressly state in their Opposition that their claimed losses are due to governmental closure orders, rather than any specific incident(s) involving the presence of or direct exposure to the COVID-19 virus at the insured properties. Opp'n at 19–20 ("No Order was issued related to a virus actually being present at, or even around, Plaintiffs' properties. Thus, Plaintiffs' losses flow from the government's wide-sweeping reaction to a pandemic – the government Orders – *not* the virus.") (emphasis in Opposition).

/ / /

---

supports the view that in certain circumstances an invisible substance or biological agent might give rise to coverage because it causes a policyholder to suspend operations due to direct physical loss of or damage to property. However, the scenario pled in the complaint does not describe such a circumstance."). In *United Talent Agency v. Vigilant Insurance Co.*, 77 Cal. App. 5th 821, 838 (2022), the court held that, unlike environmental contaminants such as asbestos, "the presence or potential presence of the [COVID-19] virus does not constitute direct physical damage or loss." As *United Talent*, *id.*, explained:

> Asbestos in installed building materials … and environmental contaminants … are necessarily tied to a location, and require specific remediation or containment to render them harmless. Here, by contrast, the virus exists worldwide wherever infected people are present, it can be cleaned from surfaces through general disinfection measures, and transmission may be reduced or rendered less harmful through practices unrelated to the property, such as social distancing, vaccination, and the use of masks. Thus, the presence of the virus does not render a property useless or uninhabitable, even though it may affect how people interact with and within a particular space.

The court further dismissed the hypothetical discussed in *Inns-by-the-Sea* as dicta, stating that "a discussion of a hypothetical scenario is not a statement of California law" and recognizing that other courts have rejected similar claims. *Id.* at 839.

Here, as Plaintiffs have expressly stated that their losses were due to governmental closure orders and not the virus, Opp'n 19–20, the court need not determine whether the physical presence of COVID-19 could constitute "direct physical damage or loss."

1  Plaintiffs specifically argue that "[t]he Court should reject Defendants' claim that
2  Plaintiffs' losses were caused by the virus and not the [Closure] Orders." *Id.* at 20.
3  Without the actual presence of the COVID-19 virus at a qualifying property, the
4  virus, pandemic, and related governmental closure orders could not have caused
5  "direct physical loss or damage to" Plaintiffs' properties under California law.
6  Accordingly, the court finds Plaintiffs have failed to allege losses covered under the
7  Policies.

### 2. Virus Exclusion

Defendants also argue that coverage is excluded under the Policies' Virus Exclusion, which states:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*See* Mot. Br. 6 n. 5 (collecting citations to Policies). Defendants contend that courts have repeatedly held that similar virus exclusions in insurance policies preclude coverage for alleged business income losses caused by or resulting from the COVID-19 virus and government orders issued to slow its spread. Mot. Br. 16; Dkt. 41 at 2 (citing *Mudpie*, 15 F.4th at 893–94).

Plaintiffs raise three primary arguments for why this exclusion should not apply. First, Plaintiffs contend that, for the Virus Exclusion to apply, Defendants need to show that Plaintiffs' claims relate to decontamination of the premises and not the containment of a pandemic. Opp'n 19. Plaintiffs do not identify any Policy language or legal authority that limits the Virus Exclusion to decontamination claims. *See id.* This argument, thus, fails. *See id.*

Second, Plaintiffs contend the court should read the Virus Exclusion narrowly under the reasonable expectations doctrine to find that the provision was not intended to exclude coverage for pandemics or the types of public health measures ordered by

10

state and local governments in response to pandemics. *Id.* at 20–21.[6] Plaintiffs cite cases, including *Lancaster v. United States Shoe Corp.*, 934 F. Supp. 1137, 1157 (N.D. Cal. 1996), to argue that an insurance policy must be read consistent with the understanding of an ordinary insured. *Id.* According to Plaintiffs, Defendants should have plainly and explicitly excluded coverage for pandemics or the public health measures ordered by state and local governments, if they had so intended. *Id.* at 21. Plaintiffs do not quote from or discuss the text of the Virus Exclusion, or identify any specific language from the Virus Exclusion that they believe is ambiguous. *See* Opp'n 19–21. Instead, they appear to argue that business losses caused by the government closure orders do not constitute "loss or damage caused by or resulting from any virus" because the provision does not expressly exclude losses from government closure orders. *See id.*

"[C]ourts do not evaluate the reasonable expectations doctrine when a policy's language is clear and unambiguous." *Boxed Foods Co. v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 523 (N.D. Cal. 2020); *see also Roug v. Ohio Sec. Ins. Co.*, 182 Cal. App. 3d 1030, 1035 (1986) ("An insurance policy is but a contract; and, like all other contracts it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to enforce the agreement.").

The Virus Exclusion disclaims coverage for "loss or damage <u>caused by or resulting from any virus</u>, bacterium or other microorganism that induces or is capable

---

[6] The reasonable expectations doctrine has been formulated as follows: "[i]n general, courts will protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance carriers, even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *Saltarelli v. Bob Baker Grp. Med. Tr.*, 35 F.3d 382, 386 (9th Cir. 1994). As the Ninth Circuit has explained, "an insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." *Id.*

of inducing physical distress, illness or <u>disease</u>." *See* Mot. Br. 6 n. 5 (collecting citations to Policies) (emphasis added). "California courts broadly interpret the term 'resulting from' in insurance contracts." *Mudpie*, 15 F.4th at 894. As the governmental closure orders were issued because of and directly in response to the COVID-19 virus and pandemic, Plaintiffs' claimed losses were clearly "caused by or resulting from" a virus. *See id.* (stating "the point is not debatable" "that the Stay at Home Orders that impacted [plaintiff's] business were issued in response to the COVID-19 pandemic").

The absence of an express pandemic clause cannot create ambiguity where none exists or imply the existence of coverage that is clearly and plainly excluded on the face of the Policies. *See Inns-by-the-Sea*, 71 Cal. App. 5th at 709 (rejecting contention that the absence of a virus exclusion created an ambiguity in otherwise unambiguous coverage language). The Virus Exclusion is not rendered ambiguous or any less plain and clear simply because Plaintiffs claim the COVID-19 virus caused a pandemic. Accordingly, Plaintiffs' argument regarding the reasonable expectation doctrine fails.

Finally, Plaintiffs argue that, under the "efficient proximate cause" doctrine, there is a factual question regarding whether their losses were legally caused by the government orders or COVID-19. Opp'n 20. The Ninth Circuit rejected this argument in *Mudpie*, 15 F.4th at 894, when it held that an insured did not plausibly allege that "'the efficient cause,' i.e., the one that set others in motion, [citation], was anything other than the spread of the virus throughout California, or that the virus was merely a remote cause of its losses." *See also Palmdale Ests., Inc. v. Blackboard Ins. Co.*, No. 21-15258, 2022 WL 1301905, at *1 (9th Cir. May 2, 2022) ("it would be difficult to blame the government's response to the COVID-19 pandemic without implicating the virus itself"); *Chattanooga Prof'l Baseball LLC v. Nat'l Cas. Co.*, No. 20-17422, 2022 WL 171936 at *2–3 (9th Cir. Jan. 19, 2022) (as amended) (same).
/ / /

Accordingly, the court finds that Plaintiffs' alleged losses are subject to the Virus Exclusion and, therefore, were not covered by the Policies under California law.

### 3. Conclusion Regarding Plaintiff's Denial of Coverage Claims

For the foregoing reasons, the court GRANTS the Motion with respect to Plaintiffs' first cause of action for breach of contract, second cause of action for breach of the covenant of good faith and fair dealing, third cause of action for bad faith denial of insurance claim, and fourth cause of action for unfair business practices, as Defendants' denials of coverage did not breach any term of the Policies and were proper under the Virus Exclusion.

Accordingly, the court DISMISSES the first, second, third, and fourth causes of action.

### B. Plaintiffs' Sixth, Tenth, and Eleventh Causes of Action for Breach of Fiduciary Duty and Negligence

Plaintiffs' sixth cause of action for constructive fraud alleges Defendants owed "fiduciary and quasi-fiduciary duties to Plaintiffs, including duties of loyalty, due care, good faith, and fair dealing in connection with their actions under the policies." Compl. ¶ 92. Plaintiffs' tenth cause of action for breach of fiduciary duty similarly alleges that Defendants, by and through their authorized employees, "represented to be registered, licensed, and authorized insurance brokers, who undertook the obligations to place insurance coverage for Plaintiffs and to assist with any questions or concerns [they] had about the policies." *Id.* ¶ 122. According to Plaintiffs, Defendants "violated and breached [their] fiduciary duties to Plaintiffs by making false, misleading, and deceptive misrepresentations and omissions regarding their policies." *Id.* ¶ 124. The eleventh cause of action for negligence alleges that "Defendants undertook the obligation and assumed a duty to place business interruption insurance coverage for Plaintiffs" and "owed Plaintiffs a duty of care to see that their interests were fully protected by that coverage that was requested by Plaintiffs and promised by Defendants." *Id.* ¶ 133.

Defendants contend they cannot be held liable on these causes of action because the law imposes no fiduciary duties on a first-party insurer. Mot. Br. 23 (citing *Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 959 (2010) ("[A]n insurer is not a fiduciary, and owes no obligation to consider the interests of its insured above its own.")). Plaintiffs do not respond to Defendants' cited authority and argue only that "Plaintiffs have sufficiently pled plausible facts to support each of the causes of action to survive Defendants' Motion to dismiss" these causes of action. Opp'n 26.

As Plaintiffs fail to identify any legal support to establish that Defendants, who are alleged to be insurers, Compl. ¶¶ 18-19, owed Plaintiffs any fiduciary duties in connection with the Policies, the court GRANTS the Motion on this basis and DISMISSES the sixth, tenth, and eleventh causes of action and the related portions of the fifth and twelfth causes of action.

### C. Plaintiffs' Fifth and Twelfth Causes of Action for Intentional and Negligent Misrepresentation

The fifth cause of action alleges Defendants "committed actionable fraud against Plaintiffs by way of affirmative misrepresentations and the concealment of material facts," through acts including "affirmatively misrepresent[ing] that there was full coverage for business interruption whenever there was a business interruption caused by physical [loss] or damage." Compl. ¶ 84. The twelfth cause of action alleges Defendants made promises and representations about the Policies when selling the Policies that were, in fact, false and made without any reasonable basis for Defendants to believe they were true when made. *Id.* ¶¶ 139–40. Under Fed. R. Civ. P. 9(b) ("Rule 9(b)"), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Defendants contend the fifth and twelfth causes of action fail because Plaintiffs' claims are based on "an unreasonable and frankly implausible claimed understanding" about the Policies' terms. Mot. Br. 22-23. Defendants further argue that Plaintiffs fail

to plead sufficient facts to state misrepresentation claims under Rule 9(b). Plaintiffs do not specifically address Defendants' arguments and argue instead that "Plaintiffs have sufficiently pled plausible facts to support each of the causes of action to survive Defendants' Motion to dismiss…."

Having held that Plaintiffs' claims regarding denial of coverage fail as a matter of law, the court holds that Plaintiffs' intentional and negligent misrepresentation claims regarding the scope of coverage of the Policies similarly fail. To the extent Plaintiffs contend Defendants made specific representations regarding coverage beyond what was pleaded in the Complaint, the court finds Plaintiffs fail to plead these claims with the particularity required by Rule 9(b). Accordingly, the court GRANTS the Motion and DISMISSES the fifth and twelfth causes of action.

**D.   Plaintiffs' Seventh, Eighth, and Ninth Causes of Action for Unjust Enrichment, Declaratory Relief, and Injunctive Relief**

Plaintiffs' remaining seventh cause of action for unjust enrichment, eighth cause of action for declaratory relief, and ninth cause of action for injunctive relief are dependent on Plaintiffs' other claims and similarly fail. The court, therefore, GRANTS the Motion as to these dependent claims and DISMISSES the seventh, eighth, and ninth causes of action.

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motion to Dismiss in its entirety.[7] As amendment would be futile given that Plaintiffs' claims and supporting legal theories fail as a matter of law, leave to amend is DENIED.

IT IS SO ORDERED.

Dated: July 21, 2022

```
                                    _____
                                    FERNANDO L. AENLLE-ROCHA
                                    United States District Judge
```

---

[7] The court need not address the parties' remaining arguments, as they are not material to the court's ruling.